IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
PITTSBURGH

| | | |
|---|---|---|
| DAVID S. JOHNSON, | ) | |
| | ) | |
| Plaintiff, | ) | 2:16-CV-01068-CB |
| | ) | |
| vs. | ) | |
| | ) | |
| CITY OF PITTSBURGH, UNIVERSITY OF PITTSBURGH, UNIVERSITY OF PITTSBURGH POLICE DEPARTMENT, SARA FALOTICO, ALEXANDER VISNICH, UNIVERSITY OF PITTSBURGH POLICE DEPARTMENT; SGT. JOHN DOE, (NAME UNKNOWN) UNIVERSITY OF PITTSBURGH POLICE DEPARTMENT; AND OFFICER JOHN DOE, (NAME UNKNOWN) UNIVERSITY OF PITTSBURGH POLICE DEPARTMENT; | ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants, | ) | |

## REPORT AND RECOMMENDATION

Cynthia Reed Eddy, United States Magistrate Judge.

I.     RECOMMENDATION

Presently before the court is a motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) [ECF No. 24] filed by Defendants Officer Sara Falotico[1] ("Officer Falotico"), Officer Alexander Visnich ("Officer Visnich"), the University of Pittsburgh (the "University"), the University of Pittsburgh Police Department (the "University

---

[1] Plaintiff incorrectly identified this Officer as Sara "Falorico," however, Defendants indicated the correct spelling of this Defendant is "Falotico" and the court will use this designation. In the previously submitted Report and Recommendation [ECF No. 41], the undersigned incorrectly identified this defendant as Officer "Falorico" throughout the Report and Recommendation, thus this amended Report and Recommendation serves to correct that designation and no other substantive changes were made to the instant Report and Recommendation.

1

PD") and the John Doe Officers ("Officers John Does 1 and 2") (collectively the "University Defendants"); and a motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) filed by Defendant the City of Pittsburgh (the "City") [ECF No. 32].

For the reasons that follow, it is respectfully recommended that Defendants' motions to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) be granted in part and denied in part as follows:

(1) Defendants' motions to dismiss be granted as to Plaintiff's Fourth Amendment and First Amendment claims against the City of Pittsburgh, the University of Pittsburgh and the University of Pittsburgh Police Department be dismissed and Plaintiff be granted leave to amend;

(2) Defendants' motions to dismiss be denied as to Plaintiff's Fourth Amendment claims against Officer Falarico, Officer Visnich, Officers John Doe 1 and 2 for their conduct in relation to Plaintiff's investigative detention;

(3) Defendants' motions to dismiss be granted as to Plaintiff's Fourth Amendment claims against Officer Falarico, Officer Visnich, Officers John Doe 1 and 2 for their conduct in relation to seizing his personal property at the scene of his arrest and these claims be dismissed with prejudice;

(4) Defendants' motions to dismiss be granted as to Plaintiff's access to the courts claims against Officer Falarico, Officer Visnich, Officers John Doe 1 and 2 and these claims be dismissed with prejudice;

(5) The University Defendants' motion to dismiss Plaintiff's punitive damages claims be denied;

(6) The University Defendants' motion to dismiss any official capacity suits against the individual officers be granted;

(7) The University Defendants' motion to strike specific dollar amounts of unliquidated damages and Plaintiff's "Statement to the Court – No Confidence" be granted and the specific dollar amounts of unliquidated damages be stricken from Plaintiff's complaint and Plaintiff's request that this case be transferred to the Court of Appeals for the Third Circuit be denied.

**II.    REPORT**

    a.  <u>Background</u>

Plaintiff initiated the present civil rights action, proceeding *pro se*, against Defendants City of Pittsburgh, University of Pittsburgh, University of Pittsburgh Police Department, Officer Sara Falotico, Officer Alexander Visnich, and two unknown John Doe officers in relation to his arrest on the University of Pittsburgh campus.

According to Plaintiff, on June 20, 2016 at approximately 3:24 a.m., Plaintiff was seated on his backpack in the doorway of a Starbucks coffee shop located in the Oakland neighborhood of Pittsburgh, Pennsylvania, reading e-mails on his phone when a University of Pittsburgh police vehicle pulled up. Plaintiff alleges that the police vehicle had the title "University of Pittsburgh Police with the state of Pennsylvania emblem with the words City of Pittsburgh beneath it." Compl. [ECF No. 16] at 3. Two police officers, Defendant Officers Falarico and Visnich exited the vehicle and approached Plaintiff. Officer Falarico questioned Plaintiff, although Plaintiff does not include what questions Officer Falarico asked in his complaint. Two additional officers, Officers John Doe 1 and 2 arrived on the scene. It is unclear whether these officers were University of Pittsburgh or City of Pittsburgh police officers. Officer Falotico commanded Plaintiff to discontinue using his phone and requested Plaintiff's identification card and conducted an "investigation" into Plaintiff. Compl. [ECF No. 16] at 4. During this time, Plaintiff was frisked and his hands were secured behind his back in handcuffs. Plaintiff asked why he was being arrested and Officer Falarico informed Plaintiff that he was not under arrest but was being detained until his identity cleared. One of the John Doe Officers then left the scene to conduct a traffic stop of a speeding motorist and Officer Falarico stated to this Officer that the arrest of the motorist "did not count" implying that the officers were in a contest to arrest homeless persons, and any person arrested that was not homeless was invalid to their competition. Plaintiff was then informed that there was a warrant for his arrest. The contents of

his pockets were emptied and all of his property was seized by Officer Visnich. Plaintiff was then transported to Allegheny County Jail where he remained separated from his property.

Plaintiff initiated the present action on July 21, 2016, alleging that the Defendants violated the Fourth Amendment by checking for outstanding warrants without reasonable suspicion or probable cause and that they illegally seized his property, and that Defendants interfered to his access to courts in violation of the First Amendment by seizing his property that included legal documents. The Defendants presently seek to dismiss the claims against them, arguing that Plaintiff has failed to state any constitutional claim and that his complaint should be dismissed. Plaintiff filed "objections" to Defendants' motions to dismiss, which will be construed as responses to the motions to dismiss. *See* [ECF Nos. 39, 40].

    b. Standard of Review

        1. *Pro Se Litigants*

*Pro se* pleadings are held to a less stringent standard than more formal pleadings drafted by lawyers. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Haines v. Kerner*, 404 U.S. 519, 520 (1972). As such, a *pro se* complaint pursuant to 42 U.S.C. § 1983 must be construed liberally, *Hunterson v. DiSabato*, 308 F.3d 236, 243 (3d Cir. 2002), so "as to do substantial justice." *Alston v. Parker*, 363 F.3d 229, 234 (3d Cir. 2004) (citations omitted). In other words, if the court can reasonably read pleadings to state a valid claim on which the litigant could prevail, it should do so despite failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence construction, or the litigant's unfamiliarity with pleading requirements. *Boag v. MacDougall*, 454 U.S. 364 (1982); *United States ex rel. Montgomery v. Bierley*, 141 F.2d 552, 555 (3d Cir.1969) (petition prepared by a prisoner may be inartfully drawn and should be read "with a measure of tolerance"). Notwithstanding this liberality, *pro se* litigants are not relieved

4

of their obligation to allege sufficient facts to support a cognizable legal claim. *See e.g., Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002). Because Plaintiff is a *pro se* litigant, this Court may consider facts and make inferences where it is appropriate. While Plaintiff does not specifically enumerate his claims, the court will make the inference that he seeks to bring 42 U.S.C. § 1983 claims against each of the Defendants for violating his Fourth, First and Fourteenth Amendment rights pursuant to the federal constitution in connection with his arrest and seizure of his property incident to that arrest.

### 2. *Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6)*

The applicable inquiry under Federal Rule of Civil Procedure 12(b)(6) is well settled. Under Federal Rule of Civil Procedure 8, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 12(b)(6) provides that a complaint may be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint that merely alleges entitlement to relief, without alleging facts that show entitlement, must be dismissed. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009). This "'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary elements." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (*quoting Twombly*, 550 U.S. at 556). Nevertheless, the court need not accept as true "unsupported conclusions and unwarranted inferences," *Doug Grant, Inc. v. Great Bay Casino Corp.,* 232 F.3d 173, 183–84 (3d Cir. 2000), or the plaintiff's "bald assertions" or "legal

conclusions." *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997).

Although a complaint does not need detailed factual allegations to survive a Rule 12(b)(6) motion, a complaint must provide more than labels and conclusions. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A "formulaic recitation of the elements of a cause of action will not do." *Id.* (citing *Papasan v. Allain,* 478 U.S. 265, 286 (1986)). "Factual allegations must be enough to raise a right to relief above the speculative level" and "sufficient to state a claim for relief that is plausible on its face." *Twombly*, 550 U.S. at 555. Facial plausibility exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

> The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. . . . Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Id.* (quoting *Twombly*, 550 U.S. at 556) (internal citations omitted).

When considering a Rule 12(b)(6) motion, the court's role is limited to determining whether a plaintiff is entitled to offer evidence in support of his claims. *See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). The court does not consider whether a plaintiff will ultimately prevail. *Id.* A defendant bears the burden of establishing that a plaintiff's complaint fails to state a claim. *Gould Elecs. v. United States,* 220 F.3d 169, 178 (3d Cir. 2000).

Courts generally consider the allegations of the complaint, attached exhibits, and matters of public record in deciding motions to dismiss. *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993). Factual allegations within documents described or identified in the complaint also may be considered if the plaintiff's claims are based upon

6

those documents. *Id*. (citations omitted). In addition, a district court may consider indisputably authentic documents without converting a motion to dismiss into a motion for summary judgment. *Spruill v. Gillis*, 372 F.3d 218, 223 (3d Cir. 2004); *Lum v. Bank of America*, 361 F.3d 217, 222 (3d Cir. 2004) (in resolving a motion to dismiss pursuant to Rule 12(b)(6), a court generally can consider "the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim.").

    c. <u>Discussion</u>

        1. <u>42 U.S.C. § 1983</u>

Plaintiff's claims are made pursuant to 42 U.S.C. § 1983 ("section 1983") which provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law. . . .

To state a claim under section 1983, a plaintiff is required to show that an individual acting under color of state law violated the plaintiff's constitutional rights or statutory rights. *West v. Atkins*, 487 U.S. 42, 48 (1988). Section 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." *City of Monterey v. Del Monte Dunes*, 526 U.S. 687, 749 n. 9 (1999) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n. 3 (1979)).

In order for a plaintiff to adequately state a claim under section 1983, he must establish that the defendant deprived him of a right secured by the United States Constitution acting under color of state law. *Mark v. Borough of Hatboro*, 51 F.3d 1137, 1141 (3d Cir. 1995). A plaintiff alleging a constitutional violation "must portray specific conduct by [] officials which violates

7

some constitutional right." *Chavarriaga v. New Jersey Dep't of Corr.*, 806 F.3d 210, 222 (3d Cir. 2015). By doing so, a plaintiff must demonstrate a defendant's "personal involvement" in the alleged constitutional violation by adequately alleging either (1) the defendant's personal involvement in the alleged violation; or (2) his actual knowledge and acquiescence in the wrongful conduct. *Id.* (citing *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988)). "Although a court can infer that a defendant had contemporaneous knowledge of wrongful conduct from the circumstances surrounding a case, the knowledge must be actual, not constructive." *Id.* (citations omitted).

Plaintiff's claims fall under the First, Fourth and Fourteenth Amendments to the United States Constitution. Each claim will be separately addressed.

### 1. Municipal Liability

Plaintiff asserts constitutional claims against the City of Pittsburgh, the University of Pittsburgh and the University of Pittsburgh Police Department in this action.

Municipalities and other local governmental units "can be sued directly under [section] 1983 for monetary, declaratory, or injunctive relief." *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 690 (1978). "But, under [section] 1983, local governments are responsible only for 'their own illegal acts,'" and, like supervisors, "are not vicariously liable under [section] 1983 for their employees' actions." *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (citations omitted, emphasis in original). To state a plausible section 1983 claim against a municipality, the complaint must contain factual allegations showing that a municipal custom or policy caused the constitutional violation. *Monell*, 436 U.S. at 694; *McTernan v. City of York, Pa.*, 564 F.3d 636, 658 (3d Cir. 2009) (the plaintiff must "identify a custom or policy, and specify what that custom or policy was"). "Where the policy concerns a failure to train or supervise municipal employees, liability

8

under section 1983 requires a showing that the failure amounts to deliberate indifference to the rights of persons with whom the employees will come into contact." *Thomas v. Cumberland Cty.*, 749 F.3d 217, 222 (3d Cir. 2014) (citations and internal marks omitted). "Once a [section] 1983 plaintiff identifies a municipal policy or custom, he must 'demonstrate that, through its deliberate conduct, the municipality was the 'moving force' behind the injury alleged.'" *Berg v. Cty. of Allegheny*, 219 F.3d 261, 276 (3d Cir. 2000) (quoting *Bd. of Cty. Com'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 404 (1997)). Where the policy or custom does not facially violate federal law, causation can be established only by demonstrating that the municipal action was taken with deliberate indifference as to its known or obvious consequences. *Id*.

Plaintiff's complaint contains no factual allegations showing that the City of Pittsburgh, the University of Pittsburgh[2] or the University of Pittsburgh Police Department[3] had a municipal custom or policy that caused his alleged constitutional violations. Accordingly, it is respectfully recommended that these Defendants be dismissed, as Plaintiff has failed to state any constitutional claim against them.[4] However, due to the leniency afforded to *pro se* litigants and

---

[2] It is unclear whether the University of Pittsburgh and/or the University of Pittsburgh Police Department are "state actors" for section 1983 purposes. However, because they do not challenge their status as a state actor, no determination as to this point will be made.

[3] The Police Department does not seek dismissal on the ground that generally police departments cannot be sued under section 1983 for merely being an administrative arm of the state or local municipality, thus no determination on this point will be made. *Padilla v. Twp. of Cherry Hill*, 110 F. App'x 272, 278 (3d Cir. 2004) (quoting *DeBellis v. Kulp*, 166 F. Supp. 2d 255, 264 (E.D. Pa. 2001) (collecting cases))

[4] City of Pittsburgh argues that the basis of Plaintiff's claim against it is that the University of Pittsburgh's police car contained an insignia which read "City of Pittsburgh," and that alone does not establish a constitutional violation on behalf of the City. While the court agrees with the City that the words "City of Pittsburgh" alone on a University of Pittsburgh police vehicle does not impute constitutional violations to the City, the recommendation will not be made to dismiss the City of Pittsburgh from this action with prejudice. Plaintiff's complaint is factually insufficient as to the involvement of the City. For example: it is unclear whether the two John Doe officers are City of Pittsburgh police officers, it is unclear whether they were present for

9

because a litigant whose civil rights complaint is dismissed for lack of factual specificity should be afforded the opportunity to amend his complaint, *Kundratic v. Thomas*, 407 F. App'x 625, 629–30 (3d Cir. 2011), the court should give Plaintiff the opportunity to amend his complaint to the extent he can adequately allege a constitutional claim against the City of Pittsburgh, the University of Pittsburgh or the University of Pittsburgh Police Department, mindful of the applicable standards he must meet to adequately state a section 1983 claim against these Defendants.

### 2. *Plaintiff's Fourth Amendment Claims*

Because it is recommended that the court dismiss the section 1983 claims against Defendants City of Pittsburgh, the University of Pittsburgh or the University of Pittsburgh Police Department due to Plaintiff's inadequate pleading, the individual liability of the Defendant officers will be addressed.

First, Plaintiff alleges that the Defendant officers violated Plaintiff's Fourth Amendment rights by investigating whether he had any outstanding warrants without reasonable suspicion or probable cause to do so and violated his constitutional rights by detaining him during the investigation. The Defendant officers argue that Plaintiff cannot state a Fourth Amendment violation for this conduct.

The Fourth Amendment of the United States Constitution protects "[t]he right of the

---

Plaintiff's investigative detention, and it is unclear whether the City has a policy or custom involving University of Pittsburgh which may or may not be constitutional. However, the fact that Plaintiff's complaint is factually insufficient does not mean that his case be dismissed with prejudice, but rather that he be given leave to amend. If amendment later proves futile, the court may alter its recommendation to reflect such a futility. Further, Plaintiff is cautioned that any representation he makes in any future pleading is subject to sanctions pursuant to Federal Rule of Civil Procedure 11(b)(3) which requires that an unrepresented party present factual contentions which have evidentiary support or will likely have evidentiary support after a reasonable opportunity for further investigation.

people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. The linchpin of the Fourth Amendment is reasonableness: whether a search or seizure is unreasonable "depends on all of the circumstances surrounding the search or seizure and the nature of the search or seizure itself." *Skinner v. Ry. Labor Execs.' Ass'n*, 489 U.S. 602, 616 (1989) (quoting *United States v. Montoya de Hernandez*, 473 U.S. 531, 537 (1985)). A court must evaluate "on the one hand, the degree to which [the search or seizure] intrudes upon an individual's privacy and, on the other, the degree to which [the search or seizure] is needed for the promotion of legitimate governmental interests." *Wyoming v. Houghton*, 526 U.S. 295, 300 (1999). Under the Fourth Amendment, a person is "seized" if "in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *Id*.

The Court of Appeals for the Third Circuit has categorized the three types of police encounters which each impose varying degrees of scrutiny:

> (1) police-citizen exchanges involving no coercion or detention; (2) brief seizures or investigatory detentions; and (3) full-scale arrests." . . . The first type of encounter does not implicate the Fourth Amendment. . . . The second category (i.e., brief seizures or Terry stops) requires a showing that the officer acted with reasonable suspicion. . . . And the third category (i.e., full-scale arrests) is proper only when an officer has probable cause. . . .

*U.S. v. Brown*, 765 F.3d 278, 288 (3d Cir. 2014) (citations omitted). "[A]n encounter between a police officer and a citizen 'loses its consensual nature,' and a seizure implicating the Fourth Amendment occurs, 'when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen.'" *Price v. City of Philadelphia*, --- F.Supp.3d ---, ---, 2017 WL 895586, *13 (E.D.Pa. March 7, 2017) (quoting *Florida v. Bostick*, 501 U.S. 429, 434 (1991)).

The Defendant officers' sole argument for dismissal is that Plaintiff's allegation that his

Fourth Amendment rights were violated by Officer Falarico when she asked for identification and subsequently conducted a warrant check does not state claim. The court agrees with the Defendant officers' assertion that an officer's "interrogation relating to one's identity or a request for identification by the police does not, by itself, constitute a Fourth Amendment seizure." *I.N.S. v. Delgado*, 466 U.S. 210, 216 (1984).

However, the Defendant officers misinterpret Plaintiff's complaint. They argue that "[t]he mere request for identification escalated into a detention only after the discovery of the arrest warrant, and Plaintiff does not and cannot plead otherwise." University Defs.' Br. [ECF No. 25] at 6. However, this is not what Plaintiff alleges. Specifically, Plaintiff claims that Officer Falarico commanded Plaintiff to discontinue using his cell phone, requested an identification card, and performed the investigation during which time Plaintiff was frisked and his hands were secured behind his back in handcuffs. While Defendants read this to mean that Plaintiff was only frisked and placed in handcuffs following the police officer's discovery of a warrant for Plaintiff's arrest, that is an improper reading of Plaintiff's complaint. Plaintiff alleges that while he was being handcuffed, he asked why he was being arrested, to which Officer Falarico responded that "he was not under arrest but being detained until his identity cleared." Compl. [ECF No. 16] at p. 4. The Defendant officers do not address whether there was reasonable suspicion to place Plaintiff in handcuffs while searching for outstanding warrants, and no determination as to that point will be made, as it was not raised. It is clear, however, that once Officer Falarico frisked and placed handcuffs on Plaintiff, she restrained Plaintiff's liberty and a seizure occurred. Officer Falarico was required at that point to have "reasonable, articulable suspicion that criminal activity is afoot" to seize Plaintiff lawfully. *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000); *Price v. City of Philadelphia*, 2017 WL 895586, at *13

(E.D.Pa., 2017).

Therefore, it is respectfully recommended that Defendants' motion to dismiss Plaintiff's Fourth Amendment claim pertaining to Officer Falarico's conduct in frisking and placing handcuffs on Plaintiff before conducting an investigation be denied. To be clear, the court is not making this recommendation based on whether Officer Falarico actually had reasonable suspicion to detain Plaintiff, as that argument was not raised by the Defendants.

Likewise, Plaintiff has alleged the requisite personal involvement to state section 1983 claim against Officer Visnich and the two John Doe officers, as they were present at the scene of his investigatory detention and arguably acquiesced in the alleged unconstitutional conduct, and it is respectfully recommended that the Defendants' motion to dismiss Plaintiff's Fourth Amendment claim pertaining to the remaining individual officers in connection with his investigative detention be denied.

Next, Plaintiff alleges that the Defendants violated his Fourth Amendment rights by seizing his personal property upon his arrest.

"A Fourth Amendment 'seizure' of personal property occurs when 'there is some meaningful interference with an individual's possessory interest in that property.'" *Brown v. Muhlenberg Twp.*, 269 F.3d 205, 209 (3d Cir. 2001) (quoting *United States v. Jacobsen*, 466 U.S. 109, 113 (1984)). The seizure must also be unreasonable, such that "when the state claims a right to make a warrantless seizure, we must balance the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion. Even when the state's interest is sufficiently compelling to justify a warrantless seizure that is minimally intrusive, the seizure will be unreasonable if it is disproportionately intrusive." *Brown v. Muhlenberg Twp.*, 269 F.3d 205, 210 (3d Cir. 2001).

However, the seizure of personal property incident to a valid arrest is not a violation of the Fourth Amendment: "once the accused is lawfully arrested and is in custody, the effects in his possession at the place of detention that were subject to search at the time and place of his arrest may lawfully be searched and seized without a warrant[.]" *U.S. v. Edwards*, 415 U.S. 800, 807 (1974). *See also Illinois v. Lafayette*, 462 U.S. 640, 648 (1983) ("it is not 'unreasonable' for police, as part of the routine procedure incident to incarcerating an arrested person, to search any container or article in his possession, in accordance with established inventory procedures[.]"). Accordingly, Plaintiff's claim that the Defendant officers Visnich, Falotico and John Does 1 and 2 violated his Fourth Amendment rights by searching and/or seizing his effects in possession at the time of his arrest should be dismissed with prejudice, as amendment would be futile.

### 3. Access to the Courts

Plaintiff alleges that his access to the courts was denied when the officers confiscated his personal property during his arrest, which included legal notes regarding an ongoing appeal in the Court of Appeals for the Third Circuit he was involved in. Plaintiff's allegations raises the "fundamental constitutional right of access to the court" represented in the First and Fourteenth Amendments to the United States Constitution. *See Lewis v. Casey*, 518 U.S. 343, 346 (1996).

To state a claim for interference with the right to court access, a plaintiff "must allege that he or she has been actually injured in his or her access to the courts, i.e., that he or she has been hindered in an effort to pursue a nonfrivolous legal claim." *Jones v. Brown*, 461 F.3d 353, 359 (3d Cir. 2006) (citing *Lewis*, 518 U.S. at 349-53). "An 'actual injury' does not occur without a showing that a claim has been lost or rejected, or that the presentation of such a claim is currently being prevented." *B.L. v. Lamas*, 2017 WL 592226, at *3 (M.D.Pa., 2017) (citing *Lewis*, 518 U.S. at 354-56). Further, the plaintiff must show that he has no other "remedy that may be awarded as recompense" for a lost or rejected claim. *Christopher v. Harbury*, 536 U.S.

14

403, 415 (2002). If the plaintiff cannot "allege an actual injury to his ability to litigate a claim, his constitutional right of access to the courts has not been violated." *Caldwell v. Beard*, 305 Fed.Appx. 1, 3 (3d Cir. 2008) (non-precedential).

First, Plaintiff does not include any information regarding his appeal that is the focus of his access to courts claim. Upon a review of the Court of Appeals for the Third Circuit's docket, the appeal that Plaintiff refers to is David Johnson v. Allegheny County Court of Comm, *et al.*, 15-4002 (3d Cir. 2015).[5] Plaintiff does not allege that he has suffered an actual injury from his legal notes being confiscated upon his arrest. Indeed, from a review of Court of Appeals docket, after Plaintiff was arrested on June 20, 2016, he made submissions to the Court of Appeals on his own behalf in support of his appeal. *See* David Johnson v. Allegheny County Court of Comm, *et al.*, 15-4002 (3d Cir. 2015) Docket No. 003112349240 (submitted July 7, 2016 explaining the arrest which occurred on June 20, 2017); Docket No. 003112358496 (submitted July 13, 2016 referring to his June 20, 2017 arrest). He can therefore not state an access to courts claim, as he was not actually prevented from litigating his appeal. To the extent that he alleges that the confiscation of his legal notes interfered with his access to his appeal, he does not allege that his claim was lost or rejected due to the confiscation of his notes, as his appellate brief was due and submitted prior to his arrest on June 9, 2016. David Johnson v. Allegheny County Court of Comm, *et al.*, 15-4002 (3d Cir. 2015) Docket No. 003112321830. In fact, the Court of Appeals affirmed the district court's dismissal of Plaintiff's case on the merits on immunity grounds, and not because Plaintiff was found to have procedurally defaulted his appeal, and he thus cannot

---

[5] The court may look to matters of public record in deciding motions to dismiss, including court dockets. *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993); *McCullough v. County of Allegheny*, 2017 WL 635290, at *2 n. 5 (W.D.Pa., 2017) (taking criminal docket into consideration in determining a motion to dismiss); *Clean Harbors, Inc. v. ACSTAR Ins. Co.*, 2010 WL 1930579, at *2 n. 7 (D.N.J. May 12, 2010) (taking civil docket into consideration in determining a motion to dismiss).

allege that his appeal was lost or rejected due to his seized legal notes. *Johnson v. Allegheny County Court of Common Pleas*, 669 Fed.Appx. 74, 75 (3d Cir. 2016). *See also Castillo v. All Jane/John Does of Deputized Postal Officers at All Facilities Plaintiff Was Incarcerated*, 2016 WL 6089853, at *6 (M.D.Pa. 2016) (dismissing access to courts claim with prejudice as the plaintiff could not show injury based upon the court's review of the docket).

Accordingly, because Plaintiff cannot possibly show that he suffered actual injury of his ability to litigate his appeal from the confiscation of his legal notes upon his arrest, it is respectfully recommended that this claim be dismissed with prejudice for failure to state a claim, as amendment would be futile.

### 4. Punitive Damages

The University Defendants move to dismiss Plaintiff's claim for punitive damages. An award of punitive damages is justified under Pennsylvania law where plaintiff has alleged that the defendant acted "in an outrageous fashion due to either the defendant's evil motive or his reckless indifference to the rights of others." *Phillips v. Cricket Lighters*, 883 A.2d 439, 445–46 (Pa. 2005). As previously set forth, a claim cannot be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) "unless it appears beyond doubt that the plaintiff can set no set of facts in support of his claim which could entitle him to relief." *Taylor v. C & A Leasing, Inc.*, 2006 WL 1520654, at *1 (W.D.Pa. 2006) (citing *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). The court finds that the University Defendants' motion to dismiss Plaintiff's claim for punitive damages at this early stage of litigation is premature and it is respectfully recommended that this request be denied, as Plaintiff has adequately stated section 1983 claims. *See e.g., Zhenping Cheng v. One World Technologies, Inc.*, 2013 WL 5773856, at *2 (D.N.J.,2013) ("The propriety of punitive damages is determined by a plaintiff's proof.").

16

### 5. *Claims against Defendant Officers in their Official Capacities*

Defendant Officers move to dismiss the claims made against them in their official capacities. While Defendant Officers are correct in asserting that official-capacity claims made against state actors are properly made against the government entity and not the individual state actors, Plaintiff does not explicitly make any claims against the Defendant Officers in their official capacities. *Kentucky v. Graham*, 473 U.S. 159, 166 (1985) ("an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity"). To the extent that Plaintiff's complaint is broadly read to include any official-capacity claims against the individual officers, it is respectfully recommended that such claims be dismissed as duplicative of the claims against the municipality.

### 6. *Motion to Strike*

In addition to moving to dismiss Plaintiff's complaint for failure to state a claim, the University Defendants move to strike certain allegedly improper submissions made by Plaintiff in his complaint.

#### i. Unliquidated Damages

The University Defendants seek to strike Plaintiff's inclusion of specific dollar amounts of unliquidated damages in his complaint. Under Rule 8 of the Local Civil Rules of Court for the Western District of Pennsylvania:

> No party shall set forth in a pleading originally filed with this Court a specific dollar amount of unliquidated damages in a pleading except as may be necessary to invoke the diversity jurisdiction of the Court or to otherwise comply with any rule, statute or regulation which requires that a specific amount in controversy be pled in order to state a claim for relief or to invoke the jurisdiction of the Court.

LCvR 8. Accordingly, it is respectfully recommended that the portion of Plaintiff's complaint which outlines his specific dollar amounts of unliquidated damages be stricken from his

complaint, as inclusion of such amounts violates the Local Rules of this Court.

## ii. Subpoena of Evidence

The University Defendants also seek to strike Plaintiff's "Emergency Request for Subpoena of Evidence" included in his complaint. The court has previously ruled on this matter. *See* Order of 9/13/2016 [ECF No. 18] (denying Plaintiff's motion for subpoena of evidence as premature).

## iii. No Confidence

Lastly, the University Defendants seek to strike Plaintiff's "No Confidence" statement to the court included in this complaint which asserts that this court is biased against him and requests that his case be transferred to the Court of Appeals for the Third Circuit. Primarily, the Court of Appeals for the Third Circuit does not yet have jurisdiction over this matter, *see* Rules of Appellate Procedure 4, 5, and it is respectfully recommended that Plaintiff's request to transfer this case to the Court of Appeals for the Third Circuit be denied.

   d. Conclusion

It is respectfully recommended that Defendants' motions to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) be granted in part and denied in part as follows:

(1) Plaintiff's Fourth Amendment and First Amendment claims against the City of Pittsburgh, the University of Pittsburgh and the University of Pittsburgh Police Department be dismissed and Plaintiff be granted leave to amend;

(2) Defendants' motion to dismiss Plaintiff's Fourth Amendment claims against Officer Falarico, Officer Visnich, Officers John Doe 1 and 2 for their conduct in relation to Plaintiff's investigative detention be denied;

(3) Plaintiff's Fourth Amendment claims against Officer Falarico, Officer Visnich, Officers John Doe 1 and 2 for their conduct in relation to seizing his personal property at the scene of his arrest be dismissed with prejudice;

(4) Plaintiff's access to the courts claims against Officer Falarico, Officer Visnich, Officers John Doe 1 and 2 be dismissed with prejudice;

(5) The Defendants' motion to dismiss Plaintiff's punitive damages claims be denied;

(6) The Defendants' motion to dismiss any official capacity suits against the individual officers be granted;

(8) The University Defendants' motion to strike specific dollar amounts of unliquidated damages and Plaintiff's "Statement to the Court – No Confidence" be granted and the specific dollar amounts of unliquidated damages be stricken from Plaintiff's complaint and Plaintiff's request that this case be transferred to the Court of Appeals for the Third Circuit be denied.

Therefore, pursuant to 28 U.S.C. § 636(b)(1)(B)-(C), Federal Rule of Civil Procedure 72, and the Local Rules for Magistrates, the parties have until **May 30, 2017** to file objections to this report and recommendation. Unless Ordered otherwise by the District Judge, responses to objections are due **June 16, 2017.** Failure to file timely objections may constitute a waiver of any appellate rights. *Brightwell v. Lehman*, 637 F.3d 187, 193 n. 7 (3d Cir. 2011).

Dated: May 10, 2017.　　　　　　　　　　　　　　　　Respectfully submitted,
　　　　　　　　　　　　　　　　　　　　　　　　　　s/ Cynthia Reed Eddy
　　　　　　　　　　　　　　　　　　　　　　　　　　Cynthia Reed Eddy
　　　　　　　　　　　　　　　　　　　　　　　　　　United States Magistrate Judge


cc:　　　Honorable Cathy Bissoon
　　　　　United States District Judge
　　　　　*via electronic filing*

　　　　　DAVID S. JOHNSON
　　　　　620 Fallsway
　　　　　Baltimore, MD 21202
　　　　　*(pro se)*

　　　　　All counsel of record *via CM/ECF electronic filing*